IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

JOHN L. SHERMAN,

    Plaintiff,

v.

TRACY WOOD AND ROD MCALLISTER, individually,

    Defendants.

1:12-CV-483-PA

**ORDER**

**PANNER, District Judge:**

Defendants move for summary judgment on plaintiff's claims under 42 U.S.C. § 1983. For the reasons stated below, defendants' motion [#7] is DENIED.

### BACKGROUND

Plaintiff John Sherman lives at the end of a common access road he shares with other neighbors, including Gold Beach Police Officer Quint Oller. Sherman and Oller had an ongoing dispute over where the acces road ends and Oller's property line begins. Sherman believes the dirt access road is county property that extends beyond the dirt itself and onto a grass area near a fence Oller built on what Oller believes is his own property. Sherman

1 - ORDER

also believes it is the duty of those who share the access road to maintain the access road. Due to the amount of rain in the area, the dirt road is often muddy and littered with puddles of water. Oller placed logs and rocks in a drainage ditch on the side of the road nearest his property.

Sherman believes the logs and rocks prevented water from draining properly, and created a hazard on the shared access road. Because Sherman believes the logs and rocks were on county property, and because property owners are responsible for maintaining the shared access road, Sherman believed he was authorized to use his truck to push the logs and rocks out of the drainage ditch and closer to Oller's fence. On several occasions, Sherman physically removed the logs and rocks Oller placed in the ditch. Sherman and Oller were unable to resolve their dispute.

Oller called the Curry County Sheriff's Office to complain about the damage to his property. On at least two occasions, officers spoke to Sherman about the access road. On February 15, 2011, defendant Rod McAllister walked the roadway with Sherman. Sherman relayed his belief to McAllister that Oller was placing objects onto county-owned property and creating a hazard. Sherman alleges that on that occasion, McAllister himself moved some of the rocks out of the drainage ditch.

On May 23, 2011, plaintiff filed a Citizens Self Crime Report against Oller. The next day, plaintiff's wife filed a Citizens Self Crime Report against Oller. Both of the reports allege that Oller is placing logs and rocks on county property. Also on March

2 - ORDER

24, Oller called the police and an officer came to take a report. Oller stated he saw Sherman intentionally destroying his property. (Lorentz Decl., Ex. 1, 4.) The officer documented the damage to Oller's property and calculated the damage at $161.37. (Lorentz Decl., Ex. 1, 3.) The officer spoke with two other neighbors who reported that the neighbors perform upkeep on the road and that Sherman had previously damaged their property when Sherman believed the property infringed on the access road. (Lorentz Decl., Ex. 1, 4-5.) The officer attempted to contact Sherman but Sherman was not home. (Lorentz Decl., Ex. 1, 5.) The officer noted plaintiff's wife's Citizens Self Crime Report in his report of the investigation.

On March 26, 2011, defendants Wood and McAllister contacted Sherman at Sherman's residence. Sherman admitted moving the logs and rocks. Sherman attempted to show the officers maps which Sherman believed proved that the logs and rocks were on county property. With McAllister's help, Wood arrested Sherman for Criminal Mischief III. The officers handcuffed Sherman's hands behind his back. Due to Sherman's complaints of pain in his shoulder, after searching Sherman, Wood uncuffed Sherman and re-cuffed him with his hands in front of his body. Defendants include a video and audio recording of their entire encounter with Sherman.

Plaintiff filed the lawsuit arguing defendants violated his Constitutional rights by arresting him without probable cause and in using excessive force during the arrest. Sherman alleges that

3 - ORDER

by handcuffing his hands behind his back, defendants tore his rotator cuff.

## STANDARDS

The court must grant summary judgment if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). An issue of fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Villiarimo v. Aloha Island Air, Inc., 281 F.3d 1054, 1061 (9th Cir. 2002) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). The court views the evidence in the light most favorable to the non-moving party. Allen v. City of Los Angeles, 66 F.3d 1052, 1056 (9th Cir. 1995). All reasonable inferences are drawn in favor of the non-movant. Gibson v. County of Washoe, 290 F.3d 1175, 1180 (9th Cir. 2002). If the moving party shows that there are no genuine issues of material fact, the nonmoving party must go beyond the pleadings and designate facts showing an issue for trial. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).

## DISCUSSION

### I. Probable Cause

Probable cause exists if, at the time of the arrest, the facts and circumstances known to the officers "were sufficient to warrant a prudent man in believing that the [defendant] had committed or was committing an offense." Edgerly v. City and County of San Francisco, 599 F.3d 946, 953 (9th Cir. 2010)(quoting Beck v. Ohio, 379 U.S. 89, 91 (1964)). Defendants arrested Sherman

4 - ORDER

for violating Criminal Mischief III, which states:

> (1) A person commits the crime of criminal mischief in the third degree if, with intent to cause substantial inconvenience to the owner or to the other person, and having no right to do so nor reasonable ground to believe that the person has such right, the person tampers or interferes with property of another.

ORS 164.345.

Sherman admitted pushing the logs and rocks out of the ditch to let water drain. (See Video of Arrest at 3:50.) Sherman also informed the officers of his belief that the logs and rocks were on county property. (See Video of Arrest at 3:00.) Immediately prior to his arrest, Sherman attempted to show Wood the map purportedly proving the rocks and logs were not on Oller's property. (See Video of Arrest at 5:00.) Sherman argues that because he had reasonable grounds to believe that damaging Oller's logs and rocks was a reasonable action (in order to maintain the shared access road), the officers lacked probable cause to arrest him for Criminal Mischief III.

Viewing the facts in the light most favorable to Sherman, I agree that a reasonable jury could conclude the officers lacked probable cause to arrest Sherman. The officers knew Sherman believed Oller placed the rocks on county property. The officers knew Sherman believed the rocks prevented the water from draining properly. The officers knew, or should have known, that it was the duty of the property owners to maintain the road. The officers knew that Sherman previously filed the reports with the county. Taken together, the officers should have realized that Sherman had reasonable grounds for believing that it was his duty to move the

5 - ORDER

logs and rocks off of the shared access road. After all, Sherman attempted to show the officers the county's own maps purportedly demonstrating that the logs and rocks were placed in county property. Over a month before the arrest, Sherman walked the road and explained his position to McAllister, who allegedly moved some of the rocks out of the ditch. Because one who has reasonable grounds for believing he could lawfully interfere with another's property is not guilty of Criminal Mischief III, a reasonable jury could conclude the officers lacked probable cause to arrest Sherman.

Simply because a jury could conclude the officers lacked probable cause, however, does not necessarily mean the officers are not entitled to qualified immunity. An officer is denied qualified immunity in a section 1983 action only if: (1) the facts, when viewed in the light most favorable to plaintiffs, show the officer's conduct violated a constitutional right; and (2) that right was clearly established and the officer would have understood his conduct to be unlawful. Torres v. City of Madera, 648 F.3d 1119, 1123 (9th Cir. 2011). An officer's mistake of fact or law does not mean he is not entitled to qualified immunity. Pearson v. Callahan, 555 U.S. 223, 231 (2009).

Here, a jury could conclude the officers could have known Sherman was not guilty of committing Criminal Mischief III yet arrested him anyway. The fact that Sherman's dispute was with a police officer from Gold Beach, who Wood played in a basketball league with, could allow a jury to conclude that the officers

6 - ORDER

arrested Sherman not because they believed he violated the law, but because the officers wanted to back a fellow officer in a neighborly dispute. The officers are therefore not entitled to qualified immunity on the probable cause claim.

## II. Excessive Force During the Arrest

Claims of excessive force during an arrest are analyzed under the protections contained in the Fourth Amendment. Graham v. Conner, 490 U.S. 386, 395 (1989). The critical question is whether the amount of force used was "reasonable" under the circumstances, which requires balancing the intrusions on the individual's Fourth Amendment rights versus the competing governmental interests at stake. Id. at 396 (internal citation omitted). Any arrest "necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." Id. (citing Terry v. Ohio, 392 U.S. 1, 22-27 (1968)). Determining whether the amount of force used was reasonable is a fact intensive question that necessarily requires looking at the totality of the circumstances involved. Id. (internal citations omitted). Officers are judged not with 20/20 hindsight, but "from the perspective of a reasonable officer at the scene[.]" Id.

A reasonable jury could conclude that the arresting officers used an unreasonable amount of force during the arrest. First, a jury could conclude the officers need not have cuffed Sherman at all to effectuate the arrest. Sherman, after all, is a 70-year-old man with bad shoulders who does not move around well. Sherman at no point became violent with the officers. Additionally, during

7 - ORDER

the attempt to cuff Sherman, Sherman immediately complained that the officers were hurting his shoulders. Sherman stated he was not resisting but that his shoulders simply would not move in the way the officers wanted the shoulders to move.

Although a jury could reasonably conclude that by not knowing of any pre-existing shoulder injury, the officers' attempt to handcuff Sherman was reasonable, a jury could also conclude that once Sherman complained of the pain to his shoulder, given the circumstances, the officers' continued attempts to force Sherman's hands behind his back were unreasonable.

Importantly, even if a jury believes Sherman was purposefully tightening his muscles, such resistance is at most passive resistance, which a reasonable jury could conclude did not authorize further jostling significant enough to tear a 70-year-old man's rotator cuff. While Wood's re-cuffing of Sherman is admirable, a jury could reasonably conclude that by that time, the damage was already done. After all, Sherman complained of pain from the very first attempts at handcuffing, and Sherman also let the officers know of the excruciating pain he experienced.

Given that a jury could reasonably conclude the officers used excessive force under the circumstances, defendants' motion for summary judgment must be denied. As any officer would realize using excessive force during an arrest is unlawful, the officers are not entitled to qualified immunity on the excessive force claim.

8 - ORDER

## CONCLUSION

Defendants' Motion for Summary Judgment [#7] is DENIED.

IT IS SO ORDERED.

DATED this __11__ day of September, 2012.

OWEN M. PANNER
U.S. DISTRICT JUDGE

9 - ORDER